February 8, 2007

 




 





In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00429-CV






JOSEPH DANIEL MONK, Appellant


V.


LISA JO POMBERG (f/k/a LISA JO MONK), Appellee






On Appeal from the 245th District Court

Harris County, Texas

Trial Court Cause No. 2004-55179






O P I N I O N

 Appellant, Joseph Daniel Monk, appeals a declaratory judgment in favor of
appellee Lisa Jo Pomberg, Joseph's ex-wife, (1) in which the trial court ordered that it
was declining jurisdiction on matters addressing conservatorship of the child and
deferring jurisdiction to the State of Iowa, where Lisa and her child reside. See Tex.
Fam. Code Ann. § 152.207 (Vernon 2002) ("A court of this state . . . may decline to
exercise its jurisdiction" in suit affecting parent-child relationship). Joseph also
appeals the trial court's award of attorney's fees relating to Lisa's declaratory
judgment action. In six issues, Joseph contends that (1) the trial court did not have
subject matter jurisdiction; (2) Lisa had no standing to bring the action; (3) the
judgment serves "no useful purpose"; (4) the trial court erred by determining the
home state of the child when there was no pending suit affecting the parent-child
relationship; (5) the trial court incorrectly found that substantial evidence was no
longer available in Texas concerning the child's personal relationships; and (6) the
trial court's award of attorney's fees incorrectly included "expenses." 

 We conclude that the trial court had jurisdiction to enter a declaratory
judgment, that the evidence is factually sufficient to support the trial court's judgment
and that Monk did not preserve his attorney's fees complaint for appeal. We further
conclude that although there is a variance between the trial court's findings and its
order declining jurisdiction, we have sufficient information to reform the judgment
to accurately reflect the court's findings. We modify the trial court's judgment and
affirm it as modified. See Tex. R. App. P. 43.2(b).


Background

 Lisa Pomberg left her husband Joseph Monk in Texas and moved to Iowa with
their son in January 2002. The two divorced a few months later. Their child has
attended first through fourth grade in Iowa; he participates in Boy Scouts, sports, and
religious education in Iowa; and he receives psychological care in Iowa. In addition,
Lisa is employed in Iowa and her parents and a number of other relatives live there. 
Joseph remains in Texas, and his son visits for several weeks each summer. The 245th
District Court presided over the 2002 divorce and custody order.

 In November 2003, Joseph filed a lawsuit in the 245th District Court to modify
terms of the conservatorship of the child. The court's order "stayed" the motions that
were filed by Joseph, declined jurisdiction, and deferred jurisdiction to the State of
Iowa. Further, the trial court found that Texas was an inconvenient forum for the
litigation; that substantial evidence is no longer available in Texas concerning the
child's care, protection, training, and personal relationships; and that Iowa is a more
appropriate forum for the litigation. The trial court also found that the child and the
child's mother have lived in Iowa since January 2002, Iowa is the child's home state,
and that neither the child nor his mother have a significant connection with Texas. (2) 
 About two months later, in January 2004, Joseph filed a voluntary petition
under Chapter 13 of the Bankruptcy Code in the Houston Division of the United
States bankruptcy court for the Southern District of Texas. The bankruptcy court
concluded that the filing for bankruptcy by Joseph automatically stayed legal
proceedings against him, including any suit affecting the parent-child relationship.

 Unaware of the bankruptcy stay, Lisa filed a petition in May 2004 for
termination of Joseph's parental rights in district court in Iowa. She alleged that
Joseph had failed to pay court-ordered child support. After Joseph informed her of
the bankruptcy stay, and concerned that the petition in Iowa might have been in
violation of the stay, Lisa dismissed the petition pending in the Iowa court.

 Lisa then filed a motion with the bankruptcy court that requested that the
automatic stay be lifted so that she could pursue the petition to terminate Joseph's
parental rights. The bankruptcy court in July 2004 lifted its stay to permit Lisa to
commence an action in the court that entered the divorce decree for that court to hear
Lisa's petition to seek termination of the parent-child relationship, or for that court
to refer the matter to another forum after it conducted a hearing. 

 In accordance with the bankruptcy court's order, Lisa filed suit in October
2004 in the court in which the decree of divorce was entered, the 245th District Court.
Her original petition for declaratory relief requested "that the Court enter a
declaratory judgment providing that Iowa is the Home State of the child, and that
LISA JO POMBERG's petition to terminate the parental rights of JOSEPH DANIEL
MONK would not be properly commenced in Harris County, Texas, and that Iowa is
the proper jurisdiction and a convenient forum to hear such termination
proceeding[.]" The petition asserted that circumstances have not changed since the
trial court declined jurisdiction in its November 2003 order. The petition also
requested attorney's fees.

 The trial court granted declaratory judgment in favor of Lisa. The trial court
found that (1) Iowa was the home state of Lisa and Joseph's child; (2) Iowa was "the
proper jurisdiction to address conservatorship of the child, including, but not limited
to the filing of a suit to terminate the parent-child relationship"; (3) Texas was "an
inconvenient forum to rule on matters addressing conservatorship of the child,
including but not limited to a suit to terminate the parent-child relationship"; and (4)
circumstances had not changed since November 2003. The trial court declined
jurisdiction "in the above-styled and numbered cause" and deferred jurisdiction to the
State of Iowa. The trial court's order awarded $5989.13 "as attorney's fees, expenses,
and costs" plus attorney's fees contingent on appeals to this Court and to the supreme
court. Upon Joseph's request, the trial court entered findings of fact and conclusions
of law supporting its ruling. 

Jurisdiction in a Declaratory Judgment Action

 In his first two issues, Joseph contends that the trial court did not have subject
matter jurisdiction to order the declaratory judgment and that Lisa did not have
standing to pursue the action. Joseph asserts that Lisa's petition for declaratory
judgment does not constitute a motion to raise the issue of inconvenient forum under
the Family Code. Joseph also contends that the trial court had continuing jurisdiction
over suits affecting the parent-child relationship, but that no such suit was pending,
and therefore the court lacked jurisdiction over the declaratory judgment action.

A. Subject Matter Jurisdiction

 Subject matter jurisdiction may be raised for the first time on appeal either by
the parties or by the court of appeals. Univ. of Tex. Sw. Med. Ctr. at Dallas v.
Loutzenhiser, 140 S.W.3d 351, 358 (Tex. 2004). Subject matter jurisdiction is a
question of law, which we review de novo. See Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998).

 Whether a court has subject matter jurisdiction in a declaratory judgment action
depends on whether the underlying controversy is within the jurisdiction of the court;
the Declaratory Judgment Act does not confer additional jurisdiction upon courts. 
Fort Bend County v. Martin-Simon, 177 S.W.3d 479, 483 (Tex. App--Houston [1st
Dist] 2005, no pet.) (citing Rush v. Barrios, 56 S.W.3d 88, 105 (Tex. App.--Houston
[14th Dist.] 2001, pet. denied)). Standing is a component of subject matter
jurisdiction. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445-46
(Tex. 1993). "The general test for standing in Texas requires that there '(a) shall be
a real controversy between the parties, which (b) will be actually determined by the
judicial declaration sought.'" Id. at 446 (citing Bd. of Water Eng'rs v. City of San
Antonio, 283 S.W.2d 722, 724 (Tex. 1955)). We consider standing under the same
standard by which we review subject matter jurisdiction generally. See Tex. Ass'n of
Bus., 852 S.W.2d at 446. "That standard requires the pleader to allege facts that
affirmatively demonstrate the court's jurisdiction to hear the cause." Id. 

B. The Uniform Declaratory Judgment Act


 The purpose of a declaratory judgment action is to establish existing "rights,
status, and other legal relations whether further relief is claimed or could be claimed." 
Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a) (Vernon 1997); see also Bonham
State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995); Martin-Simon, 177 S.W.3d
at 482. The Uniform Declaratory Judgments Act provides that it is to "be liberally
construed and administered" to fulfill its purpose "to settle and to afford relief from
uncertainty and insecurity with respect to rights, status, and other legal relations." 
See Tex. Civ. Prac. & Rem. Code ANN. § 37.002(b) (Vernon 1997). The court
issuing the declaratory judgment must act "within its jurisdiction" to "declare rights,
status, and other legal relations whether or not further relief is or could be claimed." 
See id. § 37.003(a) (Vernon 1997). The declaratory judgment may be "either
affirmative or negative in form and effect." See id. § 37.003(b). The subject matter
of a declaratory judgment action includes a "declaration of rights, status, or other
legal relations" of any question of construction or validity arising under a statute
when the person's "rights, status, or other legal relations are affected by [the] statute." 
See id. § 37.004(a) (Vernon 1997). (3)

C. The Texas Family Code

 Lisa sought a declaration of her rights under the Uniform Child Custody
Jurisdiction and Enforcement Act (UCCJEA), specifically section 152.207 of the
Family Code. See Tex. Fam. Code Ann. § 152.207. The UCCJEA provides that a
court in Texas that has jurisdiction to make a child custody determination may, at any
time, decline to exercise its jurisdiction if it determines that it is an inconvenient
forum under the circumstances and that a court of another state is a more appropriate
forum. Id., § 152.207(a). "The issue of inconvenient forum may be raised upon
motion of a party, the court's own motion, or request of another court." Id. (4) 

D. No Motions Asserted the Issue of Inconvenient Forum

 In his second issue, Joseph asserts that Lisa's petition for declaratory judgment
does not constitute "a motion by a party to a child custody proceeding" to raise the
issue of inconvenient forum under the Family Code. See id. Joseph challenges Lisa's
standing and the subject matter jurisdiction of the trial court on the ground that no
motion raises the issue of inconvenient forum. 

 Lisa responds by asserting that because the trial court had continuing
jurisdiction over the issue of custody over the child, the trial court had subject matter
jurisdiction over the declaratory action. Lisa further responds that the 245th District
Court was required to follow the bankruptcy court's directions to address the issue
of inconvenient forum. 

 The litigation here does not comply with the procedural requirements in section
152.207 of the Family Code because the litigation was not brought by motion or the
request of another court. See id. Lisa did not bring a motion to the trial court; she
brought a petition for declaratory judgment. The trial court did not bring its own
motion.

 Lisa contends that the trial court addressed the issue of inconvenient forum at
the request of the bankruptcy court. The bankruptcy court, however, did not request
that the trial court conduct a hearing on the issue of inconvenient forum. The
bankruptcy court's order states, 

the stay is lifted to permit Lisa Pomberg to commence an
action to seek termination of the parent-child relationship
between Joseph D. Monk and his child in the court in
which the decree of divorce was entered, and she may
proceed in that court, or in some other forum to which the
court which entered the divorce decree may, after hearing,
refer such action. 


Under the terms of the order, the bankruptcy court lifted its stay and gave Lisa
permission to go to the court where the decree of divorce was entered to (1)
commence an action to seek termination of the parent-child relationship, or (2) 
request that the trial court conduct a hearing to decide whether to refer the matter to
"some other forum[.]" The bankruptcy court did not request or require Lisa or the
trial court to seek another forum, but rather left it up to Lisa whether to seek
termination of Joseph's parental rights in the 245th District Court or in another forum. 
Because the matter was not brought to the trial court by motion or the request of
another court, Lisa has not complied with the procedural requirements in section
152.207 of the Family Code. See id. § 152.207(a). 

 Lisa, however, did not file an action under section 152.207 of the Family Code,
but instead filed a petition for declaratory judgment that asserted her rights under that
section of the Family Code. Therefore, we must next address Joseph's assertion that
the petition for a declaratory judgment does not constitute a motion under section
152.207 of the Family Code. In other words, may a litigant pursue declaratory
judgment to raise the issue of inconvenient forum under section 152.207 of the
Family Code or must a litigant proceed in the manner described by the Family Code
to raise that issue?

E. Propriety of Declaratory Judgment to Declare Rights Under Family Code 

 We conclude that a declaratory judgment may be used to declare rights under
Section 152.207 of the Family Code. Under Section 37.004 of the Declaratory
Judgments Act, to obtain relief under a declaratory action, the subject matter must
concern a statute, municipal ordinance, contract, or franchise. See Tex. Civ. Prac.
& Rem. Code Ann. § 37.004. Here, the subject matter concerns a statute, section
152.207 of the Family Code. See Tex. Fam. Code Ann. § 152.207. The Declaratory
Judgments Act states, "A person . . . whose rights, status, or other legal relations are
affected by a statute . . . may have determined any question of construction or validity
arising under the . . . statute . . . and obtain a declaration of rights, status, or other
legal relations thereunder." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a). Lisa
is a person whose rights, status, or other legal relations are affected by section
152.207 of the Family Code. Lisa's petition sought to obtain a declaration of rights,
status, or other legal relations under Section 152.207 of the Family Code. The only
remaining question is whether Lisa's petition seeks determination of "any question
of construction or validity arising under" the statute. See Tex. Civ. Prac. & Rem.
Code Ann. § 37.004(a).

 Construing the Declaratory Judgments Act liberally to fulfill its purpose "to
settle and to afford relief from uncertainty and insecurity with respect to rights, status,
and other legal relations," as required by section 37.002(b) of the act, we conclude
that the Declaratory Judgments Act allows Lisa to have the trial court declare her
rights, status and other legal relations under section 152.207 of the Family Code. See
id. § 37.002(b); Tex. Fam. Code Ann. § 152.207.

 We note further that the trial court had jurisdiction over the declaratory
judgment action asserted here. The trial court had continuing jurisdiction over the
custody of the child because it made the initial determination of custody of the child
and no Iowa court had assumed jurisdiction under the trial court's prior inconvenient
forum ruling. See Tex. Fam. Code Ann. § 152.202 (continuing exclusive jurisdiction
remains with court making initial determination). The trial court was thus acting
"within its jurisdiction"to "declare rights, status, and other legal relations" because
it had continuing jurisdiction over the underlying subject matter, the conservatorship
of the child. See Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a); see also Bonham
State Bank, 907 S.W.2d at 467; Martin-Simon, 177 S.W.3d at 482.

 We overrule Joseph's second issue.

F. No Pending Petitions Asserting a Suit Affecting the Parent-Child Relationship 

 In his first issue, Joseph asserts that the trial court had no jurisdiction to order
a declaratory judgment because there were no pending petitions asserting a suit
affecting the parent-child relationship. Joseph contends that the trial court has
continuing jurisdiction over suits affecting the parent-child relationship, but it does
not have continuing jurisdiction over a declaratory judgment that concerns the forum
for such a lawsuit. 

 "The Declaratory Judgments Act does not permit a court to pass on
hypothetical or contingent situations, or to determine questions not then essential to
the resolution of an actual controversy, even though such questions may in the future
require adjudication." Peacock v. Schroeder, 846 S.W.2d 905, 912 (Tex. App.--San
Antonio 1993, no pet.); see also Empire Life Ins. Co. of Am. v. Moody, 584 S.W.2d
855, 858 (Tex. 1979). A declaratory action need not concern a present lawsuit but
may include "threatened litigation in the immediate future that seems unavoidable." 
See Peacock, 846 S.W.2d at 912. In other words, an action for declaratory judgment
is appropriate when the fact situation manifests the present "ripening seeds" of a
controversy. See Save Our Springs Alliance v. City of Austin, 149 S.W.3d 674, 683
(Tex. App.--Austin 2004, no pet.); see also Gray v. Bush, 430 S.W.2d 258, 263 (Tex.
Civ. App.--Fort Worth 1968, writ ref'd n.r.e.) ("ripening seeds" means "state of facts
indicating imminent and inevitable litigation"). 

 Since custody of the child was determined in 2002, three lawsuits have been
filed to attempt to change that custody arrangement. In November 2003, the 245th
District Court declined to hear the motion to modify the custody arrangement that
was filed by Joseph, and referred the matter to Iowa. In May 2004, Lisa filed a
petition to terminate Joseph's parental rights, which she dismissed after she learned
of the bankruptcy stay. Lisa filed this petition for declaratory judgment in October
2004 after obtaining an order from the bankruptcy court that lifted the stay for her to
seek termination of Joseph's parental rights. Lisa's petitions in Iowa, the bankruptcy
court, and in the 245th District Court evidence imminent and inevitable litigation by
her to seek the termination of Joseph's parental rights. These "ripening seeds of . . .
controversy" are sufficient to confer subject matter jurisdiction on the trial court and
standing on Lisa in this declaratory judgment action. See Save Our Springs Alliance,
149 S.W.3d at 683.

 We overrule Joseph's first issue. 

Modification of Trial Court's Order

 In his third issue, Joseph contends that the order issued by the trial court
"serves no useful purpose" because the order states that the trial court "declines
jurisdiction in the above-styled and numbered cause." Joseph accurately notes that
the "above-styled and numbered cause" refers to this declaratory judgment action,
rather than to the suit to terminate the parent-child relationship. Joseph is further
correct that under this portion of the order, the trial court is declining jurisdiction over
the declaratory judgment action. We conclude that there is a conflict between this
portion of the trial court's order and the remainder of the trial court's order. 

 When an appellant raises an issue challenging a matter that may be resolved by
the modification of the trial court's judgment, a court of appeals may modify the trial
court's judgment. See Tex. R. App. P. 43.2(b); See Mobil Oil Corp. v. Ellender, 968
S.W.2d 917, 926 (Tex. 1998) (stating, "A court of appeals cannot modify a judgment
without a point of error asking it to do so."); Tex. Nat'l Bank v. Karnes, 717 S.W.2d
901, 903 (Tex. 1986). A court of appeals is empowered to modify the judgment in
accord with the findings of the trial court, when there is a conflict between the finding
and the judgment of the trial court. See In re Marriage of Edwards, 79 S.W.3d 88,
101 (Tex. App.--Texarkana 2002, no pet.). 

 Excluding the language that Joseph complains of in this appeal, the trial court's
order finds that Iowa is the proper jurisdiction to address the conservatorship of the
child, including but not limited to the filing of a suit to terminate the parent-child
relationship; Texas remains an inconvenient forum to rule on matters addressing
conservatorship of the child, including but not limited to a suit to terminate the
parent-child relationship; and the Petition for Declaratory Relief should be granted. 
The trial court also orders that Iowa is the home state of the child, that Iowa is the
proper jurisdiction to address the conservatorship of the child, and that Texas is an
inconvenient forum to rule on matters addressing conservatorship of the child,
including but not limited to a suit to terminate the parent-child relationship. The trial
court further orders that it defers jurisdiction to the State of Iowa. (5)

 We conclude that the trial court erroneously stated that it "declines jurisdiction
in the above-styled and numbered cause" because the remainder of the order and the
findings by the trial court plainly refer to the trial court's decision to decline
jurisdiction on matters addressing conservatorship of the child. We therefore modify
the order to reflect that the trial court declined jurisdiction "in matters addressing
conservatorship of the child, including but not limited to a suit to terminate the
parent-child relationship."

Inconvenient Forum

 In his fourth and fifth issues, Joseph challenges the trial court's findings that
Iowa is the home state of his and Lisa's child and that substantial evidence no longer
exists in Texas concerning the child's personal relationships. See Tex. Fam. Code
Ann. §§ 152.102(7) (defining "home state"), 152.202(a)(1) (lack of substantial
evidence necessary element of finding lack of continuing exclusive jurisdiction). 
Specifically, in his fourth issue he contends that the trial court erred by failing to
consider the child's "physical presence" in Texas to determine "home state," as is
required by the supreme court. See Powell v. Stover, 165 S.W.3d 322, 326, 328 (Tex.
2005) (physical presence is "central factor" that trial court "must consider" in
determining home state). And in his fifth issue, he asserts that "there is plenty of
substantial evidence in Texas regarding his and [his son's] relationship." 

 Under the UCCJEA, a child's home state is an element in determining which
court has initial jurisdiction in a child custody matter, and substantial evidence is an
element concerning a trial court's continuing exclusive jurisdiction. See Tex. Fam.
Code Ann. §§ 152.201(a) ("a court of this state has jurisdiction to make an initial
child custody determination only if . . . this state is the home state of the child on the
date of the commencement of the proceeding, or was the home state of the child
within six months before the commencement of the proceeding and the child is absent
from this state but a parent or person acting as a parent continues to live in this
state"), 152.202(a) ("a court of this state . . . has exclusive continuing jurisdiction . . .
[until] a court of this state determines that . . . substantial evidence is no longer
available in this state concerning the child's care, protection, training, and personal
relationships") (emphasis added). Neither initial jurisdiction nor continuing exclusive
jurisdiction are at issue in this case. The trial court found that Texas was an
inconvenient forum, implicating the multi-factor test described by section 152.207(b)
of the family code. (6) Id. § 152.207(b).

 We are directed to construe issues on appeal liberally in order to obtain a just,
fair, and equitable adjudication of the rights of the litigants. El Paso Natural Gas Co.
v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 316 (Tex. 1999); see also Segal v. Emmes
Capital, L.L.C., 155 S.W.3d 267, 274 n.8 (Tex. App.--Houston [1st Dist.] 2004, pet.
dism'd). In her brief to this court, Lisa treats Joseph's fifth issue as "one challenging
the sufficiency of the evidence to support the trial court's judgment." (7) Therefore,
considering Lisa's treatment of Joseph's first issue, and construing Joseph's issues
liberally in order to obtain a just, fair, and equitable adjudication of the rights of the
litigants, we consider appellant's assertions as challenges to the factual sufficiency
of the evidence in support of the trial court's finding that Texas is an inconvenient
forum. (8) See Pool v. Ford Motor Co., 715 S.W.2d 629, 632-33 (Tex. 1986) (applying
liberal construction to conclude appellant intended point of error "to be a complaint
of factual insufficiency."). 

 Findings of fact in a case tried to the court have the same force and effect as
a jury's verdict on questions and are reviewable for legal and factual sufficiency.
Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991); Min v. Avila, 991
S.W.2d 495, 500 (Tex. App.--Houston [1st Dist.] 1999, no pet.). The trial court's
conclusions of law are reviewable de novo. McDermott v. Cronin, 31 S.W.3d 617,
623 (Tex. App.--Houston [1st Dist.] 2000, no pet.). 

 When, as here, the appellate record contains a complete reporter's record of the
trial, the trial court's findings of fact are not conclusive, but subject to the same, well-settled standards that govern factual sufficiency challenges to jury findings. Comm'n
of Contracts v. Arriba, Ltd., 882 S.W.2d 576, 582 (Tex. App.--Houston [1st Dist.]
1994, no writ); In the Interest of M.J.Z., 874 S.W.2d 724, 728 (Tex. App.--Houston
[1st Dist.] 1994, no writ). 

 In determining factual sufficiency of the evidence to support the trial court's
finding that Texas is an inconvenient forum--an issue on which Lisa had the burden
of proof--and that the court should therefore decline jurisdiction and defer to the
state of Iowa, we must weigh all the evidence, both supporting and conflicting with
the finding, and may set the finding aside only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and manifestly unjust. See Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661
(Tex. 1951); Arriba, 882 S.W.2d at 582. In reviewing this challenge, we again
examine the evidence to determine whether some evidence supports the trial court's
finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). If some
evidence supports the finding, we determine, in light of the entire record, whether the
finding is so contrary to the great weight and preponderance of the evidence that the
finding is clearly wrong and manifestly unjust, or whether the great weight and
preponderance of the evidence supports nonexistence of the finding. Cain, 709
S.W.2d at 176. 

 In the present case, the trial court issued findings of fact that included

6. [Lisa] and the child have lived in the State of Iowa since
January of 2002.

7. At the time of [Lisa's] filing this suit, [Lisa] and the
child the subject of this action were residents of the State
of Iowa.

8. At the time of [Lisa's] filing this suit, [Joseph] was a
resident of Harris County, Texas.

. . .

12. On November 21, 2003 . . . this court signed an Order
Declining Jurisdiction and deferred jurisdiction to the State
of Iowa.

. . .

16. Substantial evidence is no longer available in Texas
concerning the child's care, protection, training, and
personal relationships.

17. Substantial evidence is available in Iowa concerning
the child's care, protection, training, and personal
relationships.

18. Texas is and remains an inconvenient forum to rule on
matters addressing conservatorship of the child, including
but not limited to a suit to terminate the parent-child
relationship.


In addition, the record of the hearing before the trial court shows that the child has
lived in Iowa since January 2002. See Tex. Fam. Code Ann. § 152.207(b)(2) (time),
(b)(3) (distance). In addition, Lisa presented testimony and documentary evidence
that the child has extensive family connections, attends school, participates in
extracurricular activities, and undergoes psychiatric therapy in Iowa. See id.
§ 152.207(b)(6) (nature and location of evidence, including testimony of the child). 
The record also shows that the child visits Joseph for several weeks every summer,
and that Joseph calls his son on most Sundays. See id. The record shows that Lisa
is employed, but does not show whether Joseph is employed, or what he does for a
living. See id. § 152.207(b)(4) (relative financial circumstances of the parties). The
record does not indicate that any domestic violence has occurred. See id.
§ 152.207(b)(1). The present appeal shows that the parties do not agree which state
should assume jurisdiction. See id. § 152.207(b)(5).

 Having reviewed the entire record, we conclude that there is ample evidence
in support of the trial court's ruling, and reviewing all evidence for and against the
trial court's determination, we conclude that the issuance of declaratory relief is
neither clearly wrong nor manifestly unjust. We overrule Joseph's fourth and fifth
issues.Attorney's Fees

 In his final issue, Joseph contends that the trial court erred by including
"expenses" in its attorney's fee award. (9) To preserve for appeal a complaint of error
in a judgment, an appellant must have made the trial court aware of his objection "by
a motion to amend or correct the judgment, a motion for new trial, or some [other]
method." Dal-Chrome v. Brenntag Sw., Inc., 183 S.W.3d 133, 144 (Tex.
App.--Dallas 2006, no pet.); see also Tex. R. App. P. 33.1(a). In his "Motion to
Reform and Correct Declaratory Judgment[,]" Joseph raises the following complaint
to the trial court's attorney's fee award: 15. Respondent requests the Court to reform its
DECLARATORY JUDGMENT and provide for
remittitur of all attorney fees awarded to [Lisa's
counsel]. It was not necessary for [Lisa] to bring a
declaratory judgment action to determine that the
Home State of the child is Texas, and the Court[']s
jurisdiction has not been properly invoked with a
child custody proceeding.


Joseph's motion does not make the trial court aware of any possible error in the
inclusion of the word "expenses" in the attorney's fee award. He has therefore failed
to preserve for appeal this complaint of the language of the judgment. We overrule
Joseph's final issue.








 Conclusion


 We modify the judgment of the trial court to reflect that the trial court declined
jurisdiction on matters addressing conservatorship of the child, including but not
limited to a suit to terminate the parent-child relationship. We affirm the judgment
as modified.


 Elsa Alcala

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.
1. The former Mrs. Monk married John Lloyd Pomberg in December 2003.
2. More specifically, the trial court's order states, in pertinent part, that it finds that:


1. neither the child, nor the child and one parent, nor the child
and a person acting as a parent, have a significant connection
with this state and that substantial evidence is no longer
available in this state concerning the child's care, protection,
training, and person[al] relationships;


2. the child and the child's mother have lived in the State of
Iowa since January of 2002 and the State of Iowa is the child's
home state; and


3. the relief requested by JOSEPH DANIEL MONK in his
Motion for Enforcement Orders for Medical Child Support and
Conservatorship and Application for Protective Order addresses
the terms and conditions of rights, powers, and duties of
conservatorship of the child and additionally finds that, pursuant
to Section 152.207, Texas Family Code, Texas is an
inconvenient forum to rule on JOSEPH DANIEL MONK'S
Motion for Enforcement Orders under the circumstances in this
case as Respondent and the minor child and necessary witnesses
reside in the State of Iowa, and Iowa is a more appropriate
forum for this determination. 
3. The Uniform Declaratory Judgment Act provides, in pertinent part:


§ 37.002. Short Title, Construction, Interpretation

 (b) This chapter is remedial; its purpose is to settle and to
afford relief from uncertainty and insecurity with respect to
rights, status, and other legal relations; and it is to be liberally
construed and administered.


§ 37.003. Power of Courts to Render Judgment; Form and
Effect

 (a) A court of record within its jurisdiction has power to
declare rights, status, and other legal relations whether or not
further relief is or could be claimed. . . .

 (b) The declaration may be either affirmative or negative
in form and effect, and the declaration has the force and effect
of a final judgment or decree.


§ 37.004. Subject Matter of Relief

 (a) A person interested under a deed, will, written
contract, or other writings constituting a writing or whose rights,
status, or other legal relations are affected by a statute,
municipal ordinance, contract, or franchise may have
determined any question of construction or validity arising under
the instrument, statute, ordinance, contract, or franchise and
obtain a declaration of rights, status, or other legal relations
thereunder.


§ 37.006. Parties

 (a) When declaratory relief is sought, all persons who
have or claim any interest that would be affected by the
declaration must be made parties. . . .


 Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann.
§§ 37.002-37.004, 37.006 (Vernon 1997).
4. The Uniform Child Custody Jurisdiction and Enforcement Act states, 

 

 § 152.207. Inconvenient Forum

 (a) A court of this state which has jurisdiction under this chapter to make a
child custody determination may decline to exercise its jurisdiction at any time if it
determines that it is an inconvenient forum under the circumstances and that a court
of another state is a more appropriate forum. The issue of inconvenient forum may be
raised upon motion of a party, the court's own motion, or request of another court.

 

 Tex. Fam. Code Ann. § 152.207(a) (Vernon 2002). 
5. The trial court's order states,


DECLARATORY JUDGMENT

 

 The Court, having considered the pleadings, testimony of the parties,
and argument of counsel, finds that:

 . . .

 E. Iowa is still the proper jurisdiction to address the conservatorship of the
child, including but not limited to the filing of a suit to terminate the parent-child relationship between JOSEPH DANIEL MONK and the child . . . ;

 F. Texas remains an inconvenient forum to rule on matters addressing
conservatorship of the child, including but not limited to a suit to terminate the
parent-child relationship;

 G. The Petition for Declaratory Relief should be granted; and

 . . . 

 IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that
Iowa is the Home State of the child, that Iowa is the proper jurisdiction to
address the conservatorship of the child and that Texas is an inconvenient
forum to rule on matters addressing conservatorship of the child, including but
not limited to a suit to terminate the parent-child relationship.

 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this
Court declines jurisdiction in the above-styled and numbered cause and defers
jurisdiction to the State of Iowa.

6. § 152.207. Inconvenient Forum

 

 (b) Before determining whether it is an inconvenient forum, a court of this state
shall consider whether it is appropriate for a court of another state to exercise
jurisdiction. For this purpose, the court shall allow the parties to submit information
and shall consider all relevant factors, including:

 (1) whether domestic violence has occurred and is likely to continue in the
future and which state could best protect the parties and the child;

 (2) the length of time the child has resided outside this state;

 (3) the distance between the court in this state and the court in the state that
would assume jurisdiction;

 (4) the relative financial circumstances of the parties;

 (5) any agreement of the parties as to which state should assume jurisdiction;

 (6) the nature and location of the evidence required to resolve the pending
litigation, including testimony of the child;

 (7) the ability of the court of each state to decide the issue expeditiously and
the procedures necessary to present the evidence; and

 (8) the familiarity of the court of each state with the facts and issues in the
pending litigation.

 

 Tex. Fam. Code Ann. § 152.207(b) (Vernon 2002).
7. Lisa also contends that because Joseph failed to provide this Court with a complete
reporter's record, Joseph has waived this point of error. However, the appellate
record has been supplemented with the trial exhibits that were missing from the first
reporter's record supplied to this court. 
8. Because this matter was determined by a bench trial, Joseph was not required to
preserve error to challenge legal or factual sufficiency. See Bass v. Walker, 99
S.W.3d 877, 883 (Tex. App.--Houston [14th Dist.] 2003, pet. denied).
9. The provision of the Declaratory Judgments Act that authorizes attorney's fees states


§ 37.009. Costs

 In any proceeding under this chapter, the court may award
costs and reasonable and necessary attorney's fees as are
equitable and just.


 Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997).